UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:13-CR-147-DCR-HAI-1 |
| | ) | No. 5:15-CV-07399-DCR-HAI |
| v. | ) | |
| | ) | **RECOMMENDED** |
| DAVID ALLEN COX, | ) | **DISPOSITION** |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 13, 2015,[1] federal prisoner David Allen Cox, proceeding *pro se*, filed a motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  D.E. 80.  His petition alleged various grounds of ineffective assistance of counsel.  On June 9, Cox filed a memorandum in support of his motion, which included his affidavit.  D.E. 90.  Cox requests an evidentiary hearing.  *Id*. at 3, 5.  The government responded to Cox's motion, D.E. 94, and attached an affidavit from Cox's trial counsel, D.E. 94-2.  On August 18, 2015, Cox filed a reply. D.E. 96.

For the reasons explained below, the undersigned **RECOMMENDS** that Cox's motion be **DENIED** on the merits.

## I.   Factual Background

In October 2013, an FBI agent filed a complaint against Cox, alleging he had distributed cocaine.  D.E. 1.  A subsequent indictment issued November 7, 2013, charged Cox with four counts of distributing cocaine and oxycodone.  D.E. 8.  On November 25, 2013, attorney

---

[1] This filing date reflects the prison mailbox rule.  *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002); D.E. 80 at 13.

Frederick J. Anderson entered an appearance as Cox's retained counsel.  D.E. 22.  At the pretrial conference on February 10, 2014, the parties announced they had reached an agreement.  D.E. 45, 85 at 3.  Cox was rearraigned the same day.  D.E. 46, 85 at 1.

Cox pleaded guilty to Counts 3 and 4 of the indictment, which involved the distribution of cocaine and hydrocodone.  D.E. 46, 61 at 1.  The government moved to dismiss Counts 1 and 2.  *Id*.  In his plea agreement, Cox admitted the following facts:

- On October 13, 2012, [Kentucky State Police ("KSP")] utilizing a confidential informant made a controlled purchase of approximately 4 ounces of cocaine from the Defendant in Menifee County for $4,400.

- On December 5, 2012, KSP utilizing a confidential informant made a controlled purchase of approximately 40 oxycodone 30mg pills from the Defendant at his residence in Menifee County, KY for $1,200.

- On January 16, 2013, FBI utilizing a confidential informant made a controlled purchase of 100 oxycodone 30mg pills from the Defendant at his residence in Menifee County, KY for $3,100.

- On April 30,[2] 2013, FBI utilizing a confidential informant made a controlled purchase of approximately 3 ounces of cocaine from the Defendant at his residence in Menifee County, KY for $2,850.

- On or about August 13, 2013, FBI utilizing a confidential informant made a controlled purchase of approximately 2¼ ounces of cocaine from the Defendant at his residence in Menifee County, KY for $2,250.

- The cocaine and oxycodone pills recovered have been submitted to the KSP lab and were identified or tested positive as cocaine and oxycodone, Schedule II controlled substances.

D.E. 61 at 1-2.

Cox's PSR records several drug transactions not included in his plea agreement.  *See* D.E. 101 at 4-7.  The PSR alleges that in total Cox "sold approximately 476.398 grams of

---

[2] The Presentence Investigation Report ("PSR") provides a date of April 20, 2013, for this transaction.  D.E. 101 at 6 ¶ 29.

cocaine, 140 oxycodone 30 mg pills, and 453 grams of marijuana"—yielding a total marijuana equivalency weight of 123.8726 kilograms.  *Id.* at 7 ¶ 33.  This marijuana equivalency weight produced a base offense level of 26.  *Id.* at 8 ¶39.

The PSR added an additional two points under USSG § 2D1.1(b)(1) because "a dangerous weapon (including a firearm) was possessed."  D.E. 101 at 8 ¶ 40.  The PSR contains four paragraphs pertaining to Cox's possession of firearms.  First, paragraph 14 memorializes a phone call from Cox's codefendant to a confidential informant ("CI") in which the codefendant "reported that Cox put a gun to his head."  *Id*. at 5 ¶ 14.  Second, in relation to an April 11, 2012, cocaine sale, a CI "reported seeing a .410 shotgun on the front porch of the residence and several other firearms inside the residence."  *Id*. at 5 ¶ 19.  Third, the PSR reports that a December 5, 2012 oxycodone sale "took place inside a Winnebago brand recreational vehicle that had several guns inside.  The CI inquired about one firearm in particular and Cox advised that he obtained the firearm from [his brother]."  *Id*. at 6 ¶ 24.  Fourth, the PSR reports:

> On September 30, 2013, a search warrant was executed on Cox's camper, residence, and nearby tree line.  Some of the items seized from the residence included $3,175 in U.S. currency, three firearms (a Ruger .22 caliber; a Rexio .22 caliber; and, a Savage .308 rifle), a white powdery substance formed in a line on the table, and[] miscellaneous pills.  A search of the camper resulted in the seizure of 12 firearms and marijuana from military-style ammunition can.

*Id*. at 7 ¶ 31.

Cox's counsel asserted objections to the PSR.  D.E. 101 at 16-20.  Regarding the firearm at paragraph 24, Cox said the gun was inside a closet and that

> on that particular occasion, the CIs opened the door . . . .  [T]he fact that the gun was revealed by the CI and was introduced to the event seems to be manufacturing a crime in that but for the CIs opening the door and introducing the gun, the gun would not be involved and the gun was not involved in any transaction.  It was pulled out of a closet.  It was incidental and the incident was generated by the CIs.

*Id*. at 18 ¶ 24.

Cox's counsel also filed a sentencing memorandum. D.E. 58. The memorandum states that Cox became addicted to drugs after the deaths of his father and brother, and that "[a]mong those who introduced him to the world of drug trafficking were the CI's who worked against him in this case." *Id*. at 2. The memorandum describes the CIs as being "upstream" from Cox in the hierarchy of the drug trafficking organization. *Id*. at 3. The memorandum argues that "[b]ecause the CI's are drug addicts, they cannot be trusted to distribute in Eastern Kentucky because they buy pills to feed their addiction and do not pay their manager. The CI's were still operating with their manager at the time the Defendant was taken into custody." *Id*.

The sentencing memorandum also addresses Cox's Guidelines calculations: "The Defendant believes that while his criminal history category is correctly calculated, it may be overstated and he requests a downward departure under 4A1.3(b)."[3]   D.E. 58 at 4. The memorandum also challenges the two-level increase for possessing a firearm on the basis that it was the CI—not Cox—who "introduced the gun into the facts" of paragraph 24 of the PSR. *Id*.

Cox's sentencing hearing was held on May 14, 2014. Cox's counsel reiterated his objection to the weapons enhancement. D.E. 87 at 4. The District Judge pointed out that the firearm in the cabinet described at paragraph 24 of the PSR was not the only firearm at issue. Paragraph 31 of the PSR also reported that agents seized three firearms from Cox's residence, plus twelve more from his camper. *Id*. at 6. Because Cox did not object to these facts, the Court explained, under application note 11 to USSG § 2D1.1(b)(1), Cox bore the burden of showing it was "clearly improbable that the weapon was connected with the offense." *Id*. at 5-6. Cox's attorney told the Court Cox would not testify because testifying would create the "risk" of

---

[3] USSG § 4A1.3(b) provides that a downward departure "may be warranted" if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

"exposure" to an increased sentence.  *Id*. at 8-9.  The Court overruled Cox's objection to the two-level increase for possessing a weapon.  *Id*. at 11.  The Court addressed Cox's other objection and found that his criminal history was not overstated.  *Id*. at 15-16.  The Court adopted the PSR's Guidelines range of 70 to 87 months, *id*. at 26, and sentenced Cox to 87 months, *id*. at 32.

## II.   Right to Collateral Attack

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Cox is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than other motions.  *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).  A document filed *pro se* is to be liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. Relation-Back

Cox filed his *pro se* § 2255 petition before the statute of limitations expired.  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal prisoners seeking habeas relief have one year in which to file a habeas petition.  28 U.S.C. § 2255(f).  In this case, the event that triggered the limitations period was "the date on which [Cox's] judgment of conviction became final."  *Id*. § 2255(f)(1).  The District Court entered its judgment against Cox

on May 14, 2014.  D.E. 63.  Federal Rule of Appellate Procedure 4(b)(1)(A) adds a fourteen-day window in which to file an appeal before a judgment becomes final.  Cox's judgment therefore became final for statute-of-limitations purposes on May 28, 2014.  Cox filed his § 2255 petition less than a year later, on May 13, 2015.  D.E. 80 at 13.

On June 9, 2015, twelve days after his statute of limitations period expired, Cox filed a memorandum in support of his motion.  D.E. 90 at 7.  The Court construes this memorandum as an amended petition.  Because the amended petition was filed after the AEDPA deadline, any new claims raised in the amended petition are time-barred.  The Court may consider only the claims in the amended petition that "relate back" to the claims in Cox's timely petition.

Under Federal Rule of Civil Procedure 15(c)(1)(B), a claim in an amended petition will "relate[] back" when the claim "arose out of the conduct, transaction, or occurrence" set out in the original petition.  "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (citations omitted).  A claim does not relate back when it differs "in both time and type" from the claims in the original petition.  *Id.* at 650.  Relation back is permitted when the amended petition adds facts, detail, and specificity to the claims asserted in the original petition.  *Cowan v. Stovall*, 645 F.3d 815, 819 (6th Cir. 2011).

Although Cox's form petition is organized under four grounds for relief, when liberally construed, Cox actually makes six different claims, each of which he describes as a "fail[ure]" of his attorney:

> CLAIM 1:   "[F]ailure to investigate potential witnesses and confidential informants [who were] using drugs while employed by Kentucky State Police Task Force and FBI joint operations.  My attorney was supposed to challenge this during sentencing and did not."  D.E. 80 at 4.

CLAIM 2A:  "[F]ailing to adequately advise me of my rights in regards to the timely review of evidence and the introduction of video evidence" that would undermine the drug weights attributed to Cox.  *Id*. at 5.

CLAIM 2B:  "My attorney failed to advise me of 'relevant conduct' and I was surprised at sentencing.  I was expecting no more than 47 months."  *Id*.

CLAIM 3:  "[F]ailure to provide a copy of transcript or other evidence" needed for preparing the § 2255 motion.  *Id*. at 7.

CLAIM 4A:  "Failure to file for procedural reasonableness."  *Id*. at 8.

CLAIM 4B:  "[Failure to properly object to the sentencing enhancement for possessing] a firearm, when I was not a felon.  (Hunting rifle)."  *Id*.

D.E. 80 at 4-8.

On June 17, 2015, this Court ordered the government to "address the claims" Cox raised in his June 9 memorandum, "including whether any claim is subject to any procedural bar such as the statute of limitations."  D.E. 91.  In the final paragraph of its response, the government states that it "objects to the consideration of any claim that was not filed in [Cox's] original pleading."  D.E. 94 at 16.  Yet the government does not identify any specific claims or factual allegations to which it objects on this basis.  Instead, the government refers to what it calls "Cox's claim of police misconduct" and a "*Brady* claim," and avers that the claim is both procedurally defaulted and meritless.  *Id*.  This Court does not construe Cox's memorandum as asserting a free-standing *Brady* claim.  Instead, Cox faults his counsel for failing to fully exploit the informants' misconduct, in violation of *Strickland*.  *See* D.E. 90 at 1-4.

Because the government's brief was not helpful in identifying which claims in Cox's memorandum relate back to his timely petition, the Court has thoroughly compared both documents and concluded that, although the claims are not presented in the same order, all of the claims in Cox's memorandum draw on the same "common 'core of operative facts'" as the claims in his form petition.  *Mayle*, 545 U.S. at 659.  Rather than raising new claims, Cox's

memorandum merely puts meat on the bones of his original petition. *See Cowan*, 645 F.3d at 819. The claims in both documents rely on the following clusters of facts and events:

- The criminal informants' drug use and duplicity in their interactions with Cox and with law enforcement.

- The quality of Cox's attorney's investigation into the facts of the case.

- The quality of Cox's attorney's advice during plea negotiations.

- The quality of Cox's representation related to sentencing.

- Cox's attorney's failure to appeal the sentence.

- Cox's attorney's failure to provide documents relevant to Cox's § 2255 motion.

Accordingly, each of the claims in Cox's memorandum relate back to the claims in his original petition. None are barred by AEDPA's statute of limitations.

## IV. Waiver of the Right to Collateral Attack

If done knowingly and voluntarily, a criminal defendant may, by the terms of the plea agreement, waive his right to file a direct appeal and his right to collaterally attack his conviction and sentence under § 2255. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). Cox's plea agreement contains the following waiver provision in paragraph 8:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal the sentencing [unless] the length of the term of imprisonment exceeds the higher of the advisory sentencing guidelines range as determined by the Court at sentencing. *Except for claims of ineffective assistance of counsel*, the Defendant also waives the right to collaterally attack the guilty plea, conviction, and sentence.

D.E. 61 at 3 (emphasis added). Cox did not file a direct appeal.

The government's first argument is that Cox's petition should be dismissed because he waived all rights to collaterally attack his conviction and sentence. D.E. 94 at 1-5. Cox "has no

8

right," the government avers, "to file the current motion." *Id.* at 2.  The government urges this Court not to "permit Cox to violate his agreement with the United States." *Id.* at 4.

However, Cox's plea agreement specifically retained Cox's "right to collaterally attack the guilty plea, conviction, and sentence," provided that the claims are based on "ineffective assistance of counsel." D.E. 61 at 3.  At the plea colloquy, the prosecutor explained that Cox "retains the right to file a separate lawsuit challenging the guilty plea, conviction, and sentence if it's on the terms of ineffective assistance of counsel." D.E. 85 at 13.  The District Court made the same observation when it reviewed the terms of the plea agreement with Cox:

> THE COURT:  Now, in this case, you are giving up the right to collaterally attack . . . the guilty plea, the conviction and the sentence *with one exception*, and that is you're reserving the right to challenge the guilty plea, conviction or the sentence based upon a claim of ineffective assistance of counsel.  Do you understand that you still have that right?
>
> THE DEFENDANT:  Yes.

D.E. 85 at 22 (emphasis added).

It is clear from the record that Cox retained his right to collaterally attack his plea, conviction, and sentenced based on claims of ineffective assistance of counsel.  Each of the claims in Cox's § 2255 petition is, in fact, based on ineffective assistance of counsel.  The Court is puzzled as to why the government would spend four pages of its brief arguing that Cox's petition should be dismissed based on his appeal waiver.  Although the government cites both paragraph 8 of the plea agreement and pages 13 and 22 of the plea colloquy transcript, *see* D.E. 94 at 1, 2, 3, 4, the government overlooks this express limitation on Cox's collateral-attack waiver.  This is a troubling mischaracterization of the record.

## V.  Procedural Default

The government's second argument is that Cox's claims are procedurally defaulted because he failed to raise them on direct appeal.  D.E. 94 at 5-7.  The government argues that a § 2255 motion "is not a substitute for direct appeal," and that "a federal court should not consider an issue that could have been raised on direct appeal absent a showing of cause or prejudice or that he is actually innocent of the crime."  *Id*. at 5.  The government argues "Cox cannot show cause for failing to raise the issues in his § 2255 motion on direct appeal.  He has offered no reason for not filing a direct appeal."  *Id*. at 5-6.  The government further argues that Cox cannot establish prejudice or actual innocence to excuse this procedural default.  *Id*. at 6-7.

Again, the Court is puzzled by this line of argument.  Under paragraph 8 of the plea agreement, Cox waived his right to appeal the (1) guily plea, (2) conviction, and (3) any within-or-below-Guidelines sentence.  D.E. 61 at 3.  Because Cox's sentence was within the Guidelines, he had no right to file a direct appeal.  Cox has done precisely what paragraph 8 of the plea agreement required him to do—he filed no direct appeal and limited his § 2255 petition to claims of ineffective assistance of counsel.

Moreover, claims of ineffective assistance of counsel typically cannot be brought on direct appeal because the record is usually not developed enough to permit review.  *Massaro v. United States*, 538 U.S. 500, 504-05 (2003).  "[A] motion under 28 U.S.C. § 2255 is generally the preferred mode for raising a claim of ineffective assistance of counsel."  *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012).  Even if the record is sufficiently developed, a federal defendant is not required to raise an ineffective-assistance claim on direct appeal.  *Massaro*, 538 U.S. at 508-09.  Because all of Cox's claims allege ineffective assistance of

counsel, they are not procedurally defaulted.  Contrary to the government's position, procedural default is not an issue in this case.

## VI.  Merits Analysis

To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688.

However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (internal quotations omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Thus, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

> To show prejudice in the guilty-plea context, a movant
>
> "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial. . . . [W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."

*Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), *cert. denied sub nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015), *reh'g denied*, 135 S. Ct. 2345 (2015). To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

## A.

At the outset, the government asserts that each of Cox's claims related to his plea agreement must fail because he makes no allegation of prejudice. Cox, the government argues, "has neither alleged nor shown that he would have proceeded to trial were it not for the actions of his attorney." D.E. 94 at 7. This is yet another frustrating mischaracterization of the record.

In his memorandum, Cox states he "would not have accepted the plea bargain" had his counsel conducted adequate pre-trial investigation. D.E. 90 at 3. In his accompanying affidavit, Cox states that had his attorney investigated further and uncovered evidence that would have supported a motion to suppress, he "would not have accepted the plea and proceeded much

12

further into the legal process including . . . going to trial." D.E. 90 at 9 (¶ 11).  In his reply to the government's argument, Cox explains he "precisely" stated in his previous memorandum that he "would not have proceeded to trial" absent his counsel's failures.  D.E. 96 at 5.  Cox has made the threshold assertion of prejudice that allows this Court to examine his ineffective-assistance-of-counsel-at-plea-bargaining claims. *See Hodges*, 727 F.3d at 534; *Hill*, 474 U.S. at 59.

**B.**

Cox's first claim faults his counsel's "failure to investigate potential witnesses and confidential informants" whom Cox says were "abusing drugs . . . while employed by Kentucky State Police Task Force and FBI joint operations." D.E. 80 at 4.  Cox says his attorney "was supposed to challenge this during sentencing and did not." *Id*.  Cox also says "[t]his was one of the main reasons I accepted the [plea agreement]." *Id*.  Cox argues that further investigation into the CIs would have helped him challenge the drug weights, could have provided an entrapment defense, and could have impeached the CIs' credibility and perhaps led to the suppression of evidence. *See* D.E. 90 at 2, 4, 9.  It thus appears Cox faults his counsel's performance both during plea negotiations and during sentencing for failing to adequately investigate and utilize information that could undermine the credibility of the CIs.

Lawyers representing criminal defendants have a duty to conduct a reasonable pre-trial investigation. *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003); *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

However, Cox cannot prevail on this claim.  He fails to meet the prejudice prong of *Strickland*.  Cox does not identify what evidence his counsel would have uncovered by conducting additional investigation that Cox and his counsel did not already know.  Without

13

pointing to some helpful evidence that his counsel failed to obtain, Cox cannot establish that the result of his plea bargaining or sentencing would have been different.

The record reveals that Cox and his attorney knew about the confidential informants' drug dealing, drug use, and dishonesty with law enforcement from the beginning.   In his memorandum, Cox states he told his counsel about "specific illegal activities of the confidential informants" and "directly asked counsel to formally investigate such, whereby appropriate defenses could be prepared."   D.E. 90 at 1.   Cox says he knew one of the CIs was "taking narcotics" and manipulating his "drug screenings" while he was working for law enforcement, and that he told his attorney to investigate this.   *Id*. at 2.   Cox says two of the CIs "provided false information to the prosecution team."   *Id*. at 3.   He describes all this activity as "police misconduct."   *Id*. at 3.

Cox further states that two of the CIs "routinely ingested narcotics and induced [Cox] into further acts of illegality while under the influence."   D.E. 90 at 4.   He says "these matters have been recorded and are part of the police evidence in this case."   *Id*.   Cox argues he "requested that his attorney investigate and challenge these matters," but his attorney failed to do so.   *Id*.

Likewise, in his affidavit, Cox states he "directed [his] attorney to investigate" the CIs.   D.E. 90 at 8.   Cox claims the CIs "routinely . . . would consume illegal narcotics during visits to my house" while they were working for law enforcement.   *Id*.   Cox claims one of the CIs "testified under oath" in an earlier criminal prosecution "that he had violated the provisions" of his CI agreement.   *Id*.

Cox's attorney also states in his affidavit that he was familiar with the CIs' misbehavior: "I investigated the case thoroughly.   I had represented two of the [CIs] several years before. . . .

14

Cox told me [two of the CIs] were continuing to deal even though they were cooperating witnesses against him." D.E. 94-2 at 1.

Almost by definition, confidential informants in drug cases are felons involved in the drug trade. *United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008). As Cox's attorney explains in his affidavit, defendants tell their attorneys that CIs are abusing drugs in "nearly every similar case." D.E. 94-2 at 1. Cox's attorney says he believed this evidence would not have helped Cox's defense. *Id*. He suggests any arguments based on the CIs' drug use would have been "futile." *Id*. at 2.

The problem with Cox's argument is that he has not given the court any factual basis that would establish prejudice. By Cox's own admission he knew, from his own personal experience, that the CIs were using and dealing drugs and violating their agreements with the government. Cox also shared this information with his attorney. Cox argues he "should have been provided with the knowledge of the illegal activities of the confidential informants before he accepted his plea bargain." D.E. 90 at 3. However, by his own admission, Cox had personal knowledge about these illegal activities before he accepted the plea agreement. Cox does not explain (1) what additional information his counsel could have uncovered before Cox accepted the plea bargain or (2) why this information would have caused him to reject the plea deal. Cox has failed to show prejudice relative to his plea bargain.

For similar reasons, Cox has not proven prejudice at sentencing. He does not identify any relevant evidence that was unknown to his counsel at the time, or explained how that evidence would have lessened his sentence. Cox's first claim is meritless.

**C.**

Ground 2A of Cox's § 2255 motion is that counsel failed to "adequately advise" him of his rights "in regards to the timely review of evidence and the introduction of video evidence" that would undermine the drug weights attributed to him.  D.E. 80 at 5.[4]  Cox appears to be saying either (1) that counsel could have used the video recordings of the drug buys at sentencing to challenge the amount of drugs the Court attributed to him, or (2) that, had Cox been aware of the videos and how he could have used them at trial, he would not have pleaded guilty.

Again, Cox cannot establish prejudice.  Cox had personal knowledge of the drug quantities involved in all his transactions with the CIs.  Cox also had personal knowledge of the undercover videos' contents—he was there when they were recorded.  He does not identify any evidence concerning the drug weights that was unknown to his counsel before the plea bargain and sentencing.  He points to no evidence that would undermine the drug weight calculations in his PSR.  Cox does not explain *how* additional advice from counsel or additional study of the videos would have changed the outcome of his plea negotiations and sentencing.  He therefore cannot meet the second prong of *Strickland*.

**D.**

Cox also claims his attorney failed to advise him "of 'relevant conduct'" and that he was "surprised at sentencing"—he was "expecting no more than 47 months."  D.E. 80 at 5.  Cox's argument concerning relevant conduct is a bit vague.  In his guilty plea, Cox admits to selling

---

[4] In his memorandum, Cox also faults his counsel for failing to advise him of the availability of an *Alford* plea.  D.E. 90 at 5.  In the *Alford* case, the Supreme Court established that a criminal defendant may plead guilty while asserting factual innocence in order to avoid trial on a greater charge.  *North Carolina v. Alford*, 400 U.S. 25 (1970).  The United States Attorneys' Manual states that *Alford* pleas "should be avoided except in the most unusual circumstances."  U.S. Attorneys' Manual 9-27.440, Plea Agreements When Defendant Denies Guilt, 1997 WL 1944713, at *1.  *Alford* pleas require "the approval of the Assistant Attorney General with supervisory responsibility over the subject matter."  *Id.*  The rarity of *Alford* pleas in the federal system counsels against finding ineffective assistance when a defense attorney fails to mention the existence of such a plea.  Nor does an *Alford* plea necessarily result in a lesser sentence than a regular plea bargain.  Cox does not explain how advice about the existence of *Alford* pleas could have helped him.  Accordingly, Cox fails to establish prejudice on this claim.

252 grams of cocaine during three separate transactions.  D.E. 61 at 1-2 ¶ 3.  The PSR records three additional cocaine transactions and reports that in total "Cox sold approximately 476.398 grams of cocaine.  D.E. 101 at 4-7.  The PSR also records transactions involving 453 grams of marijuana.  *Id*.  The plea agreement and PSR both record that Cox sold 140 oxycodone 30 mg pills.  D.E. 61 at 2; D.E. 101 at 6-7.  The Court understands Cox's "relevant conduct" argument to be that he did not know that the conduct driving his sentencing range would include the marijuana and the 224 grams of cocaine that were included in the PSR but not in paragraph three of his plea agreement.

However, Cox's attorney states he was "with Cox during the PSR interview," and that "Cox was told the meaning of relevant conduct and drug weight."  D.E. 94-2 at 2.  He says Cox studied his PSR and marked up his copy, including bracketing the PSR's sentencing range of 70 to 87 months.  *Id.*  Although Cox's former counsel claims he still possesses a copy of the PSR with Cox's handwriting, *id.*, Cox says his counsel's assertion that he bracketed the sentencing range is false.  D.E. 96 at 6.  Cox makes no claim he was not given the PSR prior to sentencing. The attorney says he "told Cox that Judge Reeves had a reputation for sentencing at the high end of the guidelines and to expect the worst of 87 months."  D.E. 94-2 at 2.

The PSR contains all of Cox's relevant conduct and clearly lists his Guidelines range as 70 to 87 months.  D.E. 101 at 12 ¶ 73.  *Id*. at 2.  The PSR's Guidelines calculation assumes a base offense level of 26—the same base offense level Cox acknowledged in his plea agreement. D.E. 61 at 3 ¶ 5(c); D.E. 101 at 8 ¶ 39.  For all these reasons, Cox's claim that he was unaware of his possible sentence lacks credibility.  However, even if his claim was credible, it would not support relief.

Even assuming Cox was "surprised at sentencing" because he did not understand "relevant conduct" and because he was "expecting no more than 47 months," these facts do not establish a claim of ineffective assistance of counsel.  "It is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993).  Instead, when the District Court properly conducts a guilty-plea colloquy and informs the defendant of the maximum penalty he may receive, the defendant cannot then argue that an attorney's inaccurate prediction caused prejudice.  *Gonzalez v. United States*, 33 F.3d 1047, 1051-53 (9th Cir. 1994); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990).

In this case, the District Court told Cox he faced a maximum statutory penalty of twenty years.  D.E. 85 at 15.  The Court told Cox his actual sentence would generally be based on his offense level and criminal history score under the Guidelines.  *Id*. at 16-17.  The Court explained it would rely on the PSR, which had not yet been prepared, and that Cox would be able to review the PSR before sentencing and lodge objections.  *Id*. at 17.  The Court explained that, until the process of dealing with objections to the PSR was finished, "it will be impossible for the Court or your attorney to know exactly what [Cox's] guideline range would be."  *Id*.  Cox admitted under oath that no one had made any promises that caused him to plead guilty other than those contained in the plea agreement itself.  *Id*. at 14.

Accordingly, Cox cannot establish prejudice, even if his attorney did give him misleading advice about what his sentence would be.

### E.

Cox's third ground for relief cites counsel's "failure to provide a copy of transcript or other evidence" Cox needed to prepare "a meaningful motion . . . pursuant to 29 U.S.C. § 2255."

18

D.E. 80. at 7.   In his memorandum, Cox argues he is "being denied Due Process of Law" because counsel will not communicate with him "regarding multiplicitous request[s] to obtain the records and other evidence."  D.E. 90 at 6; *see also id.* at 9 ¶ 6.  In his affidavit, Cox's former counsel responds, "I may not have talked to Cox after the sentencing.  He knew how to call me. I spoke with him many times in person and on the phone.  I spoke with his family several times after the sentencing."  D.E. 94-2 at 2.  In his reply brief, Cox states he has now received "2000 documents, yet to be forwarded to this prison for review," but he believes his relatives are "watching the videos and preparing transcripts."  D.E. 96 at 5.

This argument fails to state a claim of ineffective assistance of counsel during plea negotiations or at sentencing.  Any failure by Cox's formerly retained counsel to provide him with transcripts "or other evidence" could not have caused Cox to reject the plea agreement.  Nor could it have affected his sentence.  Cox has no constitutional right to effective assistance of counsel during post-conviction proceedings.  *Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Cox does not assert (and nothing in the record suggests) that Cox's attorney continued to represent him following the sentencing hearing.  Accordingly, he posits no plausible claim or deficient performance or prejudice.

## F.

Cox's fourth ground for relief cites his counsel's "[f]ailure to file for procedural reasonableness."  D.E. 80 at 8; *see also id.* at 12.  Cox does not elaborate on this claim in his briefs.[5]  "Procedural reasonableness" arguments challenging the terms of a sentence are

---

[5] At the end of his form petition, Cox cites his attorney's "failure to file for procedural reasonableness of sentence when compared to others in our case."  D.E. 80 at 12.  In his objections to the PSR, Cox found it "curious" that his Guidelines range was "more than twice" that of his codefendant.  D.E. 101 at 19-20.  At sentencing, the Court explained that Cox and his codefendant were "not similarly situated."  D.E. 87 at 27.  "His criminal history score was different, his overall guideline range obviously was different, and the nature of his drug transactions different." *Id.* at 27-28.  If Cox's argument is that his counsel failed to raise a codefendant-sentencing-disparity argument at sentencing, the record contradicts this claim.

generally made on direct appeal.  There are other places in Cox's filings where he appears to fault his counsel for not pursuing a direct appeal.  *See, e.g.*, D.E. 80 at 4 ¶¶ 11, 12(b)(2); D.E. 96 at 2-3.

Here, Cox waived his right to appeal any within-or-below-Guidelines sentence.  D.E. 61 at 3 ¶ 8.  Cox's counsel could not be deficient for failing to assert a right Cox knowingly and intelligently waived.  *See* D.E. 85 at 31.  Nor could a failure to assert a waived right have prejudiced Cox.  Any claim related to counsel's failure to file a direct appeal in this case is meritless.

## G.

Cox's final claim in his § 2255 petition complains of counsel's failure to properly object to the sentencing enhancement for possessing a firearm, specifically a "hunting rifle," when Cox was "not a felon."  D.E. 80 at 8; 12.  In his memorandum, Cox explains he wanted the two-level firearm enhancement to be "vehemently challenged" because Cox "was a non-felon and there was [not] one scintilla of evidence provided in relation to any gun; more specifically a long rifle[,] being used in the commission of a felony."  D.E. 90 at 1.

Cox was not charged with being a felon in possession of a firearm.  *See* 18 U.S.C. 922(g). The fact that he was not a felon is not relevant to his two-level sentence enhancement under USSG § 2D1.1(b)(1).  That two-level Guidelines enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed" by the defendant during the offense.  Under application note 11, the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."

In this case, Cox's counsel objected to the § 2D1.1(b)(1) enhancement.  D.E. 101 at 18; D.E. 58 at 4-5; D.E. 87 at 4-9.  But counsel's objection only addressed one firearm:  the one mentioned in paragraph 24 of the PSR that Cox calls his "hunting rifle" or "long rifle."  At sentencing, the Court pointed that, according to paragraph 31 of the PSR, agents seized fifteen additional firearms from Cox's residence and camper.[6]  Cox has never asserted that these firearms were not seized, that they were not "present" during any drug transactions, or that they were not in his possession.  In fact, in his memorandum he refers to his "lawful possession of a long rifle."  D.E. 90 at 4.

In order to avoid the two-level enhancement, Cox bore the burden of proving that, for all sixteen firearms, it was "clearly improbable" the weapons were connected to the offense.  The Court and Cox's counsel discussed whether Cox would offer testimony to attempt to meet that burden.  D.E. 87 at 8-9.  The Court warned Cox's counsel that if Cox presented testimony that was "frivolous" or that the Court considered "false," then that "could affect, of course," the Court's acceptance of Cox's credit for accepting responsibility or "an enhancement for obstruction."  *Id*. at 8.  Cox's counsel replied that he did not want to "jeopardize losing the two-point bump" because the two-point enhancement would be "preferable than exposure to something else."  *Id*.

The record makes clear that counsel did, in fact, challenge the application of the § 2D1.1(b)(1) weapon enhancement.  Counsel made a tactical decision to avoid calling Cox as a witness to supplement his legal argument with additional facts.  For these reasons, Cox cannot establish deficient performance.

---

[6] Additionally, paragraph 19 of the PSR memorializes that a CI saw a shotgun on Cox's front porch "and several other firearms inside the residence."  Paragraph 14 also records an incident where Cox "put a gun to [his codefendant's] head."  Cox makes no claim that paragraphs 14, 19, or 31 of the PSR are factually inaccurate.

Nor has Cox plausibly argued he was prejudiced by his counsel's failure to challenge the enhancement more aggressively.  First, he admits he possessed the weapon and offers nothing to suggest he could have proven it was "clearly improbable that the weapon was connected with the offense."   Second, even had Cox prevailed in challenging the firearm in paragraph 24 of the PSR, he continues to overlook the fact that there were fifteen other firearms recovered from his property.  Cox does not allege his counsel was deficient for failing to challenge those firearms or that had he done so, he would have prevailed.  Cox's counsel was not constitutionally ineffective in the way he challenged the application of the sentencing enhancement for possessing a weapon during the drug offense.

## V.  Conclusion

Cox has not met his burden of establishing ineffective assistance of counsel.   The undersigned therefore **RECOMMENDS** that his 28 U.S.C. § 2255 motion be **DENIED** on the merits.  The Court further **RECOMMENDS** that no Certificate of Appealability should issue.

This case also does not warrant an evidentiary hearing.   An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); s*ee Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."   *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

In this case, the record refutes many of Cox's contested factual allegations. Additionally, his factual allegations are also so vague that, even accepted as true, he would not be entitled to relief. Essentially, Cox offers mere speculation as to how he was prejudiced without articulating facts that could entitle him to relief.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 2nd day of November, 2015.

**Signed By:**

**_Hanly A. Ingram_**

**United States Magistrate Judge**